IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DANI MICHELLE LUCKEY** § <br>     **Plaintiff,** § <br> § <br> **v.** § <br> § <br> **UNILEVER NORTH AMERICA** § <br> **SUPPLY CHAIN COMPANY, LLC** § <br>     **Co-Defendant.** § <br> § <br>     **AND** § <br> § <br> **TIGI LINEA CORP.** § <br>     **Co-Defendant.** § <br> § <br>     **AND** § <br> § <br> **MTBC, LTD.** § <br>     **Co-Defendant.** § <br> § <br>     **AND** § <br> § <br> **MLHM BEAUTY, LLC** § <br>     **Co-Defendant.** § | **NO: 1:23-CV-00723** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, Plaintiff Dani Michelle Luckey by and through her undersigned attorneys and states as follows:

### I.  PARTIES AND JURISDICTION

1.  Dani Michelle Luckey is a natural person and resident of the State of Texas.

2.  Co-Defendant Unilever North America Supply Chain Company, LLC (hereinafter "Unilever") is a corporation with its primary headquarters, residence, and place of incorporation

in the State of New Jersey. Unilever may be served with process through its registered agent, CT Corp System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3.  Co-Defendant TIGI Linea Corp. (hereinafter "TIGI") is a corporation with its primary headquarters, residence, and place of incorporation in the State of New Jersey. TIGI may be served with process through its registered agent, CT Corp System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

4.  Co-Defendant MTBC, Ltd. (hereinafter "TBC") is a limited partnership doing business as TBC Enterprises and also doing business as ProBeautyBuys with its primary headquarters, residence, and place of organization in the State of Texas. The general partner is MLHM Beauty, LLC. TBC may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5.  Co-Defendant MLHM Beauty, LLC (hereinafter "MLHM") is the general partner of MTBC, Ltd. with its primary headquarters and residence in the State of Florida. Its place of organization is in the State of Delaware. The limited partner is MLHM Beauty, LLC. MLHM may be served with process through its registered agent, Nelson Mojena, 6990 NW 25th Street, Miami, Florida, 33122.

6.  Collectively, hereinafter, Unilever, TIGI, TBC, and MLHM are "Defendants."

7.  This Court has jurisdiction of this cause of action pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000 and Plaintiff's state citizenship is completely diverse from Defendants' state citizenships. Venue is proper in the United States District Court, Western District of Texas, Austin Division because the incident giving rise to the bodily injury and economic damages suffered by Plaintiff occurred in Travis County, Texas.

## II.     FACTS

8. The allegations of the preceding and succeeding paragraphs are incorporated herein by this reference.

9. At approximately 3:30 p.m. on or about June 26, 2021, Dani Michelle Luckey and her three children arrived at the MAA Double Creek apartment complex located at 11001 South 1st Street in Austin, Texas. Ms. Luckey and her children were guests of her cousin, Gracie Ewing, and were visiting to spend some time at the pool with Ms. Ewing.

10. Ms. Luckey and her children spent approximately one hour at the pool facilities before returning to their vehicle around 4:45 p.m. When they reached their vehicle, Ms. Luckey's two daughters got in while she put her son down next to her and began placing their belongings in the trunk.

11. After loading their things, Ms. Luckey retrieved a canister of dry shampoo – TIGI Bed Head Rockaholic Dirty Secret (hereinafter "Rockaholic") – from the trunk to treat and cleanse her hair.

12. As she was removing the Rockaholic canister from the vehicle it fell to the ground and ruptured. The canister began spraying its contents all over Ms. Luckey's lower extremities and her son. Almost immediately, both the can and dry shampoo material that was now covering Ms. Luckey's lower body ignited.

13. A substantial fire engulfed Ms. Luckey's feet, legs, and buttocks causing severe burns. Fortunately, her son escaped physically injury during the incident.

14. Ms. Luckey was rushed to Dell Seton Medical Center by ambulance where it was determined that she suffered severe burns to over 20% of her body. Her injuries necessitated

hospitalization for 10 days from June 26 to July 6, 2021. The severity and pain of these injuries required Ms. Luckey to undergo general anesthesia to receive necessary care and treatment.

15.     The depth and nature of these burns made treatment difficult and, despite best medical efforts, Ms. Luckey had to endure multiple infections in the damaged areas. The most severe of these required additional hospitalization and surgery. Ms. Luckey was admitted to Methodist Hospital in San Antonio, Texas for an additional 20 days, from July 13 to August 2, 2021, to receive the necessary specialized treatment. This treatment was unimaginably painful and involved multiple skin grafts taken from other areas of Ms. Luckey's own body.

16.     Ms. Luckey's burns suffered from the ignition of the shampoo material resulted in severe physical pain and suffering, and permanent disfigurement to a large portion of her body. In addition, her scars are permanent and cannot be excised. She has continuous pain in her feet, legs, buttocks, and scarred areas. She has also suffered severe emotional trauma including, post-traumatic stress disorder, nightmares, and panic attacks.

17.     To this day, Ms. Luckey suffers and endures great pain and discomfort daily from her injuries and grafts. She continues to treat the scarred tissue on both of her legs. This care is painful, difficult, and will be required for the foreseeable future. Ms. Luckey's past treatment and her necessary ongoing care have created a substantial financial burden.

18.     As a result of the injuries and required treatment Ms. Luckey was unable to return to performing her minimum duties at work until October 2021. Even then, and for two months following her return, she was only able to work in a part-time capacity. The reduction in her ability to work caused a substantial loss of earnings and exacerbated the financial impact this incident has had on her and her family.

19. At the time of the Rockaholic fire, it was manufactured, marketed, sold, and distributed by Unilever and TIGI. The specific product at issue has since been subject to a recall due to the levels of flammable and carcinogenic benzene used in its propellant. The propellant in Rockaholic also included the explosive and highly flammable ingredients isobutane, propane, denatured alcohol, and butane.

20. At the time of the Rockaholic fire, Ms. Luckey was a contract sales representative for TBC. Part of her job responsibilities with TBC included marketing, selling, distributing, and delivering Rockaholic and other similar and related hair and beauty products to retail vendors. At no time during her employment did TBC, MLHM, or any defendant in this matter train or warn Ms. Luckey as to the acute hazardous nature of the Rockaholic product.

21. The Rockaholic canister and propellant are not properly designed. The canister is inadequately designed in that it is unreasonably and unnecessarily susceptible to rupture and fire during normal consumer use. The propellant is inadequately designed in that it is unreasonably and unnecessarily flammable, if not explosive during normal consumer use.

22. Economically viable and safer alternative designs exist with respect to both container and propellant. These safer designs have been adopted across the industry without impairment to the usefulness of the product. Had a safer design been employed in this case, Ms. Lucky's injuries would have been prevented.

23. Defendants' conduct and lack of care have forever harmed and diminished Ms. Lucky's life. Defendants should be held accountable for their actions both to reimburse Ms. Luckey for her damages, but also to encourage Unilever and TIGI to safely design and manufacture consumer products in a responsible and safe manner, and to encourage TBC or MLHM train and

warn its employees and consumers of the profound dangers involved in the regular use of these products.

### III.   CAUSES OF ACTION

24. The allegations of the preceding and succeeding paragraphs are incorporated herein by this reference.

*<u>Strict Liability</u>*

25. Unilever and TIGI designed, manufactured, supplied, and marketed the product that caused Plaintiff's injuries and contained defective conditions (unreasonably dangerous packaging and unreasonably dangerous propellant) that were unreasonably dangerous to persons whom Unilever and TIGI could reasonably expect to use or be harmed by foreseeable use or misuse of Rockaholic. Thus, Rockaholic was defectively designed and packaged. Economically feasible, safer alternative designs were readily available and widely known at the time Rockaholic was designed, manufactured, and marketed. The defective conditions of Rockaholic caused Plaintiff's injuries.

26. Rockaholic's product defects constitute a new and independent, or superseding, cause of injury to Plaintiff that intervened between the negligence, if any, of others and resulted in the final injuries to Plaintiff.

27. Unilever and TIGI are engaged in the business of supplying/manufacturing hair products for consumer use, and the product in question was expected to and did reach the user without substantial or relevant change of its condition when it left Unilever and TIGI's control.

*<u>Negligence by Unilever and TIGI</u>*

28. At all relevant times to this cause of action, Unilever and TIGI owed a duty to exercise ordinary care in the design of the Rockaholic product involved in the fire made the basis of this suit. Unilever and TIGI's duty extended to all those who could reasonably be expected to

be harmed by foreseeable use or misuse of the Rockaholic product, including but not limited to Plaintiff.

29. Unilever and TIGI breached this duty and were negligent. Unilever and TIGI's negligent acts and/or omissions include but are not limited to the following:

    a.    Failure to safely design the Rockaholic product to avoid foreseeable risks of harm;

    b.    Failure to safely manufacture the Rockaholic product including assembly, and material and compound selection;

    c.    Failure to properly test and inspect the Rockaholic product for defects that created a reasonably foreseeable risk of harm; and

    d.    Failure to provide adequate warnings for the safe use of the Rockaholic product, including the importance of fire protection.

30. Each of the above acts and/or omissions were singularly and/or cumulatively a proximate cause of the occurrence in question and the resulting injuries and damages sustained by Plaintiff.

31. Unilever and TIGI's negligence constitute a new and independent, or superseding, cause of injury to Plaintiff that intervened between the negligence, if any, of others and resulted in the final injuries to Plaintiff.

***Negligence by TBC and MLHM***

32. At all relevant times to this cause of action, TBC and MLHM owed a duty to exercise ordinary care in the marketing and warning of the Rockaholic product involved in the fire made the basis of this suit. TBC and MLHM's duty extended to all those who could reasonably

be expected to be harmed by foreseeable use or misuse of the Rockaholic product, including but not limited to Plaintiff.

33. TBC and MLHM breached this duty and were negligent. TBC and MLHM's negligent acts and/or omissions include but are not limited to the following:

    a. Failure to properly market the Rockaholic product that created a reasonably foreseeable risk of harm; and

    b. Failure to provide adequate warnings for the safe use of the Rockaholic product, including the importance of fire protection.

34. Each of the above acts and/or omissions were singularly and/or cumulatively a proximate cause of the occurrence in question and the resulting injuries and damages sustained by Plaintiff.

35. TBC and MLHM's negligence constitute a new and independent, or superseding, cause of injury to Plaintiff that intervened between the negligence, if any, of others and resulted in the final injuries to Plaintiff.

### *Gross Negligence / Exemplary Damages*

36. Further, the acts and omissions of Defendants were grossly negligent because such acts and omissions, when viewed objectively from the standpoint of Defendants at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Consequently, Plaintiff is entitled to and hereby seeks recovery of exemplary damages from Defendants in the maximum amount allowable by law.

*Vicarious Liability*

37. Defendants are vicariously liable for the damages proximately caused to Plaintiff by virtue of the negligent and wrongful conduct of its representatives and employees who acted within the course and scope of their employment when designing the vehicle. The actions of Defendants' employees and representatives proximately caused Plaintiff's injuries and damages. Therefore, Defendants are vicariously liable to Plaintiff for the negligent acts and/or omissions of their employees and representatives on the basis of *respondeat superior*.

## IV. DAMAGES

38. As a direct and proximate result of Defendants' acts and omissions, Plaintiff seek all damages against Defendants to which she is entitled. Plaintiff's damages are increasing and not fully known at this time but greatly exceed $1,000,000. Plaintiff's damages include, but are not limited to:

    a. Plaintiff's past and future medical expenses;

    b. Plaintiff's past and future lost wages;

    c. Plaintiff's past and future pain and suffering;

    d. Plaintiff's past and future mental anguish;

    e. Plaintiff's disfigurement;

    f. Loss of consortium; and

    g. Exemplary damages.

## V. JURY DEMAND

39. Plaintiff hereby demands a trial by jury.

## VI. PRAYER

Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final hearing of this cause, Plaintiff have judgment against Defendants granting the following relief:

a. Recovery of a reasonable monetary award or awards as compensatory damages, in amounts and to the extent to be proven at trial;

b. Exemplary damages in an amount sufficient to deter future wrongful conduct of this nature;

c. Prejudgment and post-judgment interest thereon at the maximum rate and earliest date allowed by law;

d. Plaintiff's costs in the action; and

e. Such other and further relief to which she may be justly entitled.

Respectfully submitted,

THE LAW OFFICE OF MATTHEW W. TYNAN
16508 Glimmering Road
Manor, Texas 78653
(512) 923-7112

*/s/ Matthew W. Tynan*
Matthew W. Tynan
State Bar No. 24072489
mwtynan@gmail.com

Houston Todd Musick
State Bar No. 24076581
htmusick@themusicklawfirm.com
THE MUSICK LAW FIRM, PLLC
P. O. Box 29685
Austin, Texas 78755
(512) 693-7776

*Attorneys for Plaintiff*